```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/20/2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARIA MOLINA o/b/o M.W.M.,                       :
                                                 :
                    Plaintiff,                   :         **OPINION AND ORDER**
                                                 :
          -against-                              :         15-CV-8088 (JLC)
                                                 :
CAROLYN W. COLVIN, Acting                        :
Commissioner, Social Security                    :
Administration,                                  :
                                                 :
                    Defendant.                   :
------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

In 2013, plaintiff Maria Molina applied for Supplemental Security Income ("SSI"), claiming that her minor daughter, M, had a learning disability. Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), issued a final decision in 2015 denying plaintiff's application on the ground that M was not disabled. Plaintiff now seeks review of the Commissioner's decision under 42 U.S.C. § 405(g).

The parties have consented to proceed before a magistrate judge for all purposes in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure (Dkt. No. 12). Pursuant to the scheduling order governing this case (Dkt. No. 7), the parties have filed the administrative record ("AR") and a joint stipulation ("JS") raising three disputed issues. For the reasons set forth below, the Court concludes that the administrative law judge ("ALJ") failed to adequately

develop the record and, accordingly, remands this case to the Commissioner for further proceedings.

## I. DISPUTED ISSUES

The parties raise the following disputed issues in their joint stipulation:

1. Whether the ALJ's conclusion that M's impairments imposed only a marked limitation in the domain of Acquiring and Using Information and *no* limitation in the domain of Interacting and Relating with Others was supported by substantial evidence.

2. Whether the ALJ failed to perform her duty to develop the record by failing to interrogate Dr. [Matilda] Brust's testimony in a meaningful manner, by refusing to permit M's representative to question the medical adviser, and/or by failing to order a current consultative examination by a qualified speech-language pathologist.

3. Whether the ALJ explained her reasons for finding that M did not have more than a marked limitation in the domain of Acquiring and Using Information and that M had no limitation in the domain of Interacting and Relating with Others with sufficient specificity to allow meaningful judicial review.

JS at 3 (emphasis in original).

## II. DISCUSSION

In its analysis of the second issue, the Court concludes that the ALJ failed to adequately develop the record. Although the Court therefore finds it unnecessary to resolve the other issues raised in the joint stipulation, the Court will address them to the extent that they present potential problems that the ALJ can remedy on remand. *See, e.g., Davenport ex rel. D.W.P. v. Comm'r of Soc. Sec.*, No. 14-CV-2734 (WHP), 2015 WL 5577450, at *14 (S.D.N.Y. Sept. 22, 2015) (declining to address "any further issues with the ALJ's opinion [that] would require remand" after concluding that remand was necessary "based on the ALJ's failure to develop the record adequately").

### A. Childhood Disability Standard

To determine whether a child is disabled, the Commissioner follows a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). First, the Commissioner determines whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(a), (b). If so, the child is not considered to be disabled. *Id.* Otherwise, the Commissioner proceeds to step two, at which point she determines whether the child has "an impairment or combination of impairments that is severe." 20 C.F.R. § 416.924(a). If the child does not have a severe impairment, she is not considered to be disabled. 20 C.F.R. § 416.924(a), (c). If the child has a severe impairment, the Commissioner continues to step three, which requires her to decide whether the claimant's impairment or combination of impairments meets or functionally equals an impairment in the "listings." 20 C.F.R. § 416.924(a), (d). To make this

3

determination, the Commissioner considers the child's functioning in terms of six "broad areas of functioning" called "domains." 20 C.F.R. § 416.926a(b)(1). The domains are as follows:

> (i) Acquiring and using information;
> (ii) Attending and completing tasks;
> (iii) Interacting and relating with others;
> (iv) Moving about and manipulating objects;
> (v) Caring for yourself; and,
> (vi) Health and physical well-being.

*Id.*

A child is considered to be disabled if she has a "marked" limitation—that is, a limitation that "interferes seriously with [her] ability to independently initiate, sustain, or complete activities"—in at least two domains. 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation "is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* Additionally, a child is considered disabled if she has an "extreme" limitation—that is, a limitation that "interferes *very* seriously with [her] ability to independently initiate, sustain, or complete activities"—in at least one domain. 20 C.F.R. § 416.926a(e)(3)(i) (emphasis added). An extreme limitation "is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*

### B. Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000). Consequently, the "'ALJ, unlike a judge in a

4

trial, must on behalf of all claimants affirmatively develop the record.'" *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009) (quoting *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999)) (internal alterations omitted). The duty of the ALJ is to "'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) (quoting *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004)).

Here, a lay person represented M at the hearing before the ALJ. JS at 1. When a claimant is unrepresented by counsel, "'the ALJ is under a heightened duty 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Horton v. Barnhart*, No. 03-CV-76 (HB), 2004 WL 514759, at *3 (S.D.N.Y. Mar. 15, 2004) (quoting *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)).

"Whether the ALJ has met his duty to develop the record is a threshold question." *Hooper v. Colvin*, No. 15-CV-6646 (JLC), 2016 WL 4154701, at *7 (S.D.N.Y. Aug. 5, 2016). "Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." *Id.* (internal quotation marks and citations omitted). "Remand is appropriate where this duty is not discharged." *Id.* (citing *Moran v. Astrue*, 569 F.3d 108, 114–15 (2d Cir. 2009)).

5

## C. Failure to Adequately Develop the Record

### 1. Questioning of Dr. Matilda Brust

The Court concludes that the ALJ did not adequately develop the record. To begin, the ALJ failed to elicit the rationale underlying the opinions of non-examining medical expert Dr. Brust, a pediatrician, even though the ALJ relied heavily on Dr. Brust's opinion in her decision. At the hearing, the ALJ asked Dr. Brust whether M had a limitation in each of the six domains. AR at 47–48. After receiving little more than yes-or-no answers, however, the ALJ did not request any further explanation. Indeed, the ALJ's examination of Dr. Brust lasts only two transcript pages. *Id.* at 46–48; *see Miranda v. Barnhart*, No. 04-CV-7257 (LAK), 2006 WL 6174093, at \*13 (S.D.N.Y. Feb. 1, 2006) (remanding for failure to develop record in case where ALJ "displayed a consistent pattern of neglecting to follow up on pertinent topics of inquiry and failing to ask any questions of the medical expert"); *Alvarez v. Bowen*, 704 F. Supp. 49, 53 (S.D.N.Y. 1989) (remanding in part because of "ALJ's inadequate questioning of . . . board-certified psychiatrist[] and . . . a vocational expert").

The record does include a report from Dr. Brust titled "Summary of exhibits relating to [M]," which is dated September 4, 2014, the day of the hearing. AR at 330. After briefly summarizing the evidence in the record, this one-page report ends with a conclusory determination that M "has a marked limitation in acquiring and using information" and that "[a]ll other domains show no problems." *Id.* The

6

report reveals little of Dr. Brust's reasoning and therefore was not a substitute for meaningful examination at the hearing.

Remand is particularly appropriate here given the outsized role that Dr. Brust's opinion appeared to play in the ALJ's decision. The decision includes a neutral, detailed summary of the evidence, but virtually no analysis of it. AR at 20–23. After summarizing the evidence, the decision simply gives a boilerplate overview of each of the six domains followed by a conclusory sentence stating whether M has a limitation in the domain and, if so, the degree of the limitation. *Id.* at 24–28. The ALJ's findings with respect to both M's impairments and her limitations in the six domains mirror Dr. Brust's testimony. *Compare id.* at 19, 24–28 *with id.* at 47–48. Dr. Brust's opinions thus appear to function as a substitute for independent analysis. That is, the ALJ appears to have adopted the non-examining expert's opinions wholesale—without ever probing the underlying rationale, at least not expressly. The ALJ simply states, in a conclusory manner, that Dr. Brust's testimony is "well supported by the substantial evidence in the case record." *Id.* at 23.

Although the ALJ gave Dr. Brust's testimony "significant weight," AR at 23, the regulations provide that "because nonexamining sources have no examining or treating relationship with [the claimant], the weight [given to] their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 416.927(c)(3). Here, Dr. Brust provided almost no

7

"supporting explanations" and, consequently, her testimony, at least on the record before the ALJ, was not entitled to the "significant" weight it was given. AR at 23.

On remand, plaintiff requests that "should the agency require testimony from a medical adviser, that witness should be someone other than Dr. Brust, and preferably a licensed speech-language pathologist." JS at 38. The Court declines to direct the Commissioner to retain any particular type of expert in future proceedings. If the Commissioner chooses to retain Dr. Brust again, the ALJ should, however, ensure that she assigns her testimony the proper weight given that Dr. Brust is a pediatrician and not, as far as the Court can tell, a speech or language specialist. *See* 20 C.F.R. § 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

### 2. Qualifications of Dr. Jacqueline Mindell

Speech-language pathologist Dr. Jacqueline Mindell submitted a report dated March 5, 2014, in which she opined that M had "marked" limitations in three domains—namely, the domains of Acquiring and Using Information, Attending and Completing Tasks, and Interacting and Relating with Others. AR at 310–13. When Dr. Mindell completed the report, she had been seeing M twice weekly since September 2013. *Id.* at 21, 310. To the extent that Dr. Mindell is a "qualified" speech-language pathologist under the regulations, her opinion would appear to be subject to the treating-physician rule. *See* 20 C.F.R. § 404.1513(a)(5) ("'[Q]ualified' means that the speech-language pathologist must be licensed by the State

8

professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence from the American Speech-Language-Hearing Association."); *Baldwin v. Astrue*, No. 07-CV-6958 (RJH) (MHD), 2009 WL 4931363, at *22 (S.D.N.Y. Dec. 21, 2009) ("If a qualified speech-language pathologist treated a claimant, the pathologist's report should be evaluated under the treating-physician rule.") (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

Here, however, the ALJ did not clarify Dr. Mindell's credentials or discuss the potential applicability of the treating-physician rule. *See Walsh v. Colvin*, No. 12-CV-933 (WGY), 2014 WL 1239117, at *14 (N.D.N.Y. Mar. 25, 2014) (remanding where "[n]othing in the hearing officer's decision indicates that he accorded [speech-language pathologist's] opinion the special consideration required of a treating source"); *Baldwin*, 2009 WL 4931363, at *22 (remanding where ALJ "neglected to clarify [speech-language pathologist's] credentials and likewise failed to address whether the so-called treating-physician rule applied to her findings"). The ALJ's decision is also silent with respect to the weight that she assigned to Dr. Mindell's opinion. Nor does the ALJ explain why she credited Dr. Brust's opinion over Dr. Mindell's. Thus, if the treating-physician rule applied, the ALJ failed to comply with it. *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth

9

reasons for the weight assigned to a treating physician's opinion."); *Bataille v. Astrue*, No. 11-CV-0353 (ENV), 2013 WL 3816742, at *4 (E.D.N.Y. July 22, 2013) ("[E]ven if . . . [the] determination [to credit non-examining doctor over treating physician] were correct, the law does not admit to silence as to why the determination is correct.").

### 3. Examination of Other Witnesses

Although the ALJ's failure to develop the testimony of Dr. Brust is probably a more serious problem, the ALJ was also not particularly inquisitive when questioning M and plaintiff (M's mother) at the hearing. Indeed, the entire hearing transcript is less than 17 pages, and much of it is devoted to non-substantive issues, including discussions about administrative and procedural matters and a protracted colloquy regarding plaintiff's contact information. AR at 34–51. Though plainly not conclusive, the length of a transcript can be some evidence of the ALJ's failure to adequately develop the record. *See, e.g.*, *Moran*, 569 F.3d at 113 (remanding for failure to develop the record where transcript of "hearing [was] fewer than thirteen pages long"); *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) ("The scant record herein, which consists of a thirteen-page transcript, reveals a host of lost opportunities to explore the facts."); *Torres v. Barnhart*, No. 02-CV-9209 (AJP), 2007 WL 1810238, at *10 (S.D.N.Y. June 25, 2007) ("[T]he record reveals a host of lost opportunities where ALJ . . . should have questioned [plaintiff] more fully concerning various aspects of his testimony. The hearing was brief; the transcript only 20 pages."); *Anderson v. Comm'r of Soc. Sec.*, No. 01-CV-3330 (WHP) (JCF),

10

2002 WL 31045861, at *3 (S.D.N.Y. May 31, 2002) ("[D]uring the thirteen minute hearing (the transcript of which takes up all of ten pages), the ALJ never conducted a detailed inquiry that might have yielded useful, precise information about [plaintiff's] complaints, thereby failing to adequately develop the record.").

Given that M was unrepresented by counsel, the length of the transcript is especially concerning. In such situations, the ALJ has a "heightened duty to develop the record and conscientiously to explore all relevant facts." *Cooper v. Heckler*, No. CIV. H-84-1055 (JAC), 1985 WL 77598, at *3 n.5 (D. Conn. Sept. 4, 1985) (claimant represented by lay person at administrative hearing); *see also Echevarria*, 685 F.2d at 755. "The reason for this added duty is obvious: claimants unassisted by skilled counsel are unlikely to call to the ALJ's attention all of the information which the ALJ should consider in evaluating the claim." *Charlemagne v. Schweiker*, No. 81-CV-6420 (CSH), 1984 WL 157, at *3 (S.D.N.Y. Apr. 11, 1984). Here, the ALJ was not particularly probing during her examination of M or her mother, which may owe to the fact that the ALJ relied too heavily on M's lay representative to develop the record. Indeed, after asking M only a few questions, she encouraged the representative to "take the lead." AR at 38. On remand, the ALJ should question M and her mother more thoroughly.[1]

---

[1] Plaintiff argues that the ALJ cut off M's lay representative and "actively discourag[ed]" her from questioning Dr. Brust before ending the hearing. JS at 30. The hearing transcript, however, does not bear out this accusation. AR at 50. Instead, it appears that M's representative had nothing more to say when the ALJ concluded the proceeding. *Id.* at 50–51. In any event, on remand, any representative appearing for M should be able to thoroughly question Dr. Brust or any other testifying expert retained by the Commissioner.

11

D.  **Other Potential Issues to Address on Remand**

Because the Court concludes that the ALJ failed to adequately develop the record for the reasons discussed above, the Court need not reach the other issues raised in the joint stipulation. The Court will, however, briefly address some of plaintiff's other contentions to the extent that they raise potential problems that the ALJ can address on remand.

### 1. Effect of M's Language Impairment on Domain of Interacting and Relating with Others

Plaintiff emphasizes that poor language skills are relevant not only to the domain of Acquiring and Using Information, but also to the domain of Interacting and Relating with Others. JS at 11–15. This proposition is uncontroversial. *See* Childhood Q & A Compendium May 2001, JS App'x B, at 35 ("We do not assign the language and speech impairments to specific domains, but as with all other impairments, consider a child's communication activities in whatever domains(s) is involved in those activities."); *Johnson ex rel. A.J. v. Astrue*, No. 11-CV-5247 (JMF), 2013 WL 1187436, at *13 n.1 (S.D.N.Y. Mar. 22, 2013) ("'[A] child's problems with speech and language need to be assessed in both the 'acquiring and using information' domain and the 'interacting and relating with others' domain.'") (quoting *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 489 (E.D.N.Y. 2003)).

Here, the ALJ neglected to expressly analyze the extent to which M's language impairment affected, or did not affect, her functioning in the domain of Interacting and Relating with Others. Nor did the ALJ ask Dr. Brust whether M's language impairment, which Dr. Brust herself had diagnosed, affected M's

12

functioning in this domain. On remand, the ALJ should address M's language impairment in the context of the domain of Interacting and Relation with Others. *See, e.g., Dunaway ex rel. E.B. v. Colvin*, No. 14-CV-6301P, 2015 WL 5712297, at *15 (W.D.N.Y. Sept. 29, 2015) (remanding where "ALJ's decision does not demonstrate that he fully and adequately considered the [e]ffect of [child's] demonstrated severe speech and language delays in assessing her limitations in the domain of interacting and relating with others").

### 2. CELF-4

Plaintiff argues at length that the ALJ failed to adequately account for M's scores on the fourth edition of the Clinical Evaluation of Language Fundamentals ("CELF-4"), emphasizing that two of M's scores on this test were more than three standard deviations below the mean and that one score was just slightly less than three standard deviations below the mean. JS at 9. Plaintiff contends that M's language impairment, as reflected in her CELF-4 scores, is "probably" so severe that she has an "extreme limitation" in two domains: Acquiring and Using Information and Interacting and Relating with Others. *Id.*

In response, the Commissioner argues that the ALJ reasonably disregarded M's CELF-4 scores because they predated plaintiff's SSI application by more than two years and therefore did not account for years of speech therapy, which M began receiving shortly after she took the CELF-4. *Id.* at 21. The Commissioner also notes that M's more recent IQ scores were sufficiently high that they did not even suggest a "marked" limitation in any domain. *Id.* at 22–23. According to the

13

Commissioner, the ALJ reasonably relied on M's more recent IQ scores instead of her older CELF-4 scores. *Id.*

Although the Court might theoretically "'glean'" this rationale for the ALJ's treatment of M's CELF-4 scores from her decision, the ALJ's decision is not in harmony with this rationale. *See* JS at 36 (quoting *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013)). Indeed, while the Commissioner is correct that M's CELF-4 scores date back to 2011, the ALJ apparently believed that the scores were from 2013. AR at 23, 231. Thus, the Commissioner's explanation appears to be a *post hoc* rationalization that does not reflect the ALJ's thinking. *See Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) ("A reviewing court 'may not accept appellate counsel's post hoc rationalizations for agency action.'") (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). To the extent that the ALJ views M's CELF-4 scores as outdated, or as otherwise unreliable, her decision should say so and explain why.[2] *See Marizan ex rel. A.O. v. Colvin*, No. 13-CV-3428 (VEC) (FM), 2014 WL 3905911, at *10 (S.D.N.Y. Aug. 11, 2014) ("If the ALJ determines on remand that

---

[2] As the Commissioner points out, the ALJ noted that the language assessment containing M's CELF-4 scores predated plaintiff's SSI application by "[o]ver two years." JS at 21, 35; AR at 20, 231. But it is unclear whether the ALJ realized that the CELF-4 scores were part of that 2011 assessment. Indeed, the ALJ did not address M's CELF-4 scores in her discussion of the assessment, but rather three pages later when discussing Dr. Brust's opinion. AR at 23. And, there, the ALJ states, incorrectly, that M's CELF-4 scores were from 2013, *id.*, which likely owes to the ALJ's reliance on Dr. Brust's report which had erroneously indicated that the scores were from 2013 instead of 2011. *Id.* at 330. Consequently, it is not even clear that the ALJ realized how old M's CELF-4 scores were, much less that she viewed them as stale.

[child's] performance IQ score of 70 is not sufficiently current, he should . . . clearly explain his reasoning for discrediting those scores . . . .").

Moreover, in the ALJ's discussion of the CELF-4, it is not even clear that she understood that M's scores were approximately three standard deviations below the mean and thereby at least potentially indicative of an extreme limitation. AR at 23; 20 C.F.R. § 416.926a(e)(3) (an extreme limitation is "the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean"). The Commissioner may be correct that M's more recent IQ scores are a better measure of her functioning, but the ALJ never made this finding. If she does so on remand, she should at least address M's CELF-4 scores given the significant role that they can play in disability determinations. *See* 20 C.F.R. § 416.926a(e)(4)(iii)(B) ("When we do not rely on test scores, we will explain our reasons for doing so in your case record or in our decision."); *Miles ex rel. J.M. v. Astrue*, 775 F. Supp. 2d 715, 727 (S.D.N.Y. 2011) ("[T]he CELF-4 examination is properly considered a 'comprehensive standardized test designed to measure ability or functioning' in the domain of interacting and relating with others.") (citing 20 C.F.R. § 416.926a(e)(2)(iii)); *F.M. v. Astrue*, No. 08-CV-4430 (CPS), 2009 WL 2242134, at *8 (E.D.N.Y. July 27, 2009) ("Given the vital importance of language abilities to the domain of acquiring and using information, the CELF-4 is properly considered a 'comprehensive standardized test designed to measure ability or functioning' in the domain.") (citing 20 C.F.R. § 416.926a(e)(2)); *Martinez v. Astrue*, No. 07-CV-3156 (WHP) (GWG), 2008 WL 4178155, at *8

(S.D.N.Y. Sept. 8, 2008) ("Given the obvious potential relevance of the results of th[e CELF] speech test to an evaluation of the domain areas of 'acquiring and using information' and 'interacting and relating with others,' this test should have been addressed further at the hearing and in the ALJ's decision. In other words, an understanding of the relevance of this test appears to be 'crucial' to the evaluation of [plaintiff's] abilities.").[3]

### III. CONCLUSION

For the reasons discussed above, the Court remands this case for further proceedings that are consistent with this Opinion and Order. On remand, the ALJ should:

1. Elicit and assess the rationale and evidence underlying Dr. Brust's opinions or, in the alternative, the opinions of any other expert retained by the Commissioner;

---

[3] The Commissioner contends that the ALJ was under no obligation to address M's CELF-4 scores because M took the test before she applied for SSI. JS at 21–22. In the Commissioner's view, an ALJ has "'no obligation to consider evidence from . . . before the relevant period,'" meaning before the filing of the SSI application. JS at 21 (quoting *Williams v. Colvin*, 98 F. Supp. 3d 614, 631 (W.D.N.Y. 2015)). This proposition may hold true for some types of evidence. But the Court does not believe it applies to standardized tests—at least not to the extent that test results that predate the SSI application are indicative of the claimant's functioning after the application is filed. Indeed, the regulations provide that children's IQ scores "should be considered current" for between one and four years. 20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 112.00(D)(10) ("IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above. IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or above."). The parties here have not directed the Court to any evidence concerning the length of time for which CELF-4 scores remain valid.

2. Develop the record with respect to the credentials of Dr. Mindell, or any other speech-language pathologist who is presently treating M, to determine if the person qualifies as a treating physician and, if so, apply the treating physician rule;

3. More thoroughly question both M and her mother;

4. Analyze whether M's language impairment affects her functioning in the domain of Interacting and Relating with Others; and

5. Address the significance of M's CELF-4 scores on her functioning in the domains of Acquiring and Using Information and Interacting and Relating with Others.

The Clerk is respectfully directed to close Docket No. 21 and to enter judgment remanding this case pursuant to sentence four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Dated: New York, New York
December 20, 2016

JAMES L. COTT
United States Magistrate Judge